NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OTIS V., | Civil Action No. 18-742 (JLL) |
| Petitioner, | OPINION |
| v. | |
| CHARLES GREEN, | |
| Respondent. | |

**LINARES**, Chief District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Otis V.,[1] filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Following an order to answer, the Government filed a response to the Petition, (ECF No. 6), to which Petitioner has replied, (ECF No. 6). For the following reasons, this Court will deny the petition without prejudice.

## I. BACKGROUND

Petitioner is a native and citizen of Trinidad and Tobago who became a lawful permanent resident of this country in October 1980. (ECF No. 12-3). While in this country, Petitioner was convicted of a New York state assault charge in 2000 and federal bank fraud charges in 2008. (*Id.* at 1). Following his release from custody on the bank fraud charges, Petitioner went on a cruise in 2014. (*Id.*). Upon his return to the United States at the end of the cruise, Petitioner applied for admission in the United States based on his prior lawful permanent resident status. (*Id.*). Because of Petitioner's criminal history, however, the Government determined that Petitioner was not

---

[1] Given the privacy concerns which arise out of the sensitive information contained in the filings in this immigration habeas matter, the Court will refer to Petitioner only by his first name and last initial in this opinion and the accompanying order.

1

clearly entitled to admission as a lawful permanent resident and his final inspection and a decision on his admissibility was deferred. (ECF No. 6-2 at 4, ECF No. 12-3 at 2–4). Petitioner was thereafter paroled into the United States and directed to appear for inspection in Newark. (ECF No. 6-2 at 4). According to the Government and Petitioner's immigration file, Petitioner "failed to appear for his scheduled deferred inspection" and was thereafter arrested by an immigration fugitive task force. (*Id.*). Petitioner instead insists that he reported to an immigration officer and attempted to comply with immigration officials for the next three years, but was ultimately taken into custody in June 2017. (*See* ECF No. 12 at 4). In any event, on or about June 5, 2017, Petitioner's parole was revoked by the Government and Petitioner was taken back into immigration custody and detained as an applicant for admission pursuant to 8 U.S.C. § 1225(b). (ECF No. 6-2; ECF No. 12-3 at 2–4). Petitioner has remained in detention since that time.

During the period between June 2017 and March 2018, Petitioner appeared various times before an immigration court for removal proceedings. (*See* ECF No. 6-5). During the course of these hearings, Petitioner's removal matter was postponed multiple times – both at the request of Petitioner and the request of the Government or the immigration judge. (*Id.*). Ultimately, however, Petitioner was ordered removed on March 30, 2018. (ECF No. 6-4). Petitioner, however, filed an appeal with the Board of Immigration Appeals on April 30, 2018. (ECF No. 12-1). It is not clear whether the Board has addressed that appeal at this time, and it thus appears that Petitioner's appeal of his removal order remains pending.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

**1. Petitioner is subject to detention pursuant to 8 U.S.C. § 1225(b)**

In his habeas petition, Petitioner argues that his ongoing immigration detention pending a final order of removal has become unreasonable, and that as such he should now be entitled to a bond hearing. Because Petitioner's entitlement to relief is dependent upon the statutory basis for his detention, this Court must first determine that basis to evaluate Petitioner's claims. In his initial petition, Petitioner argued that he was subject to detention pursuant to 8 U.S.C. § 1226(c). (*See* ECF No. 1). In his reply brief, however, Petitioner acknowledges that the immigration courts determined that he was subject to detention as an applicant for admission pursuant to 8 U.S.C. § 1225(b), but argues that this conclusion on the part of the immigration courts was based on an improper interpretation of the controlling statutes. Essentially, Petitioner argues that because he was not issued a notice to appear until three years after his parole into the United States, he was not actually paroled and was instead admitted, and is therefore not subject to detention pursuant to 8 U.S.C. § 1225(b) as that statute only applies to aliens deemed applicants for admission.

Initially, the Court notes that Congress, by adopting the REAL ID Act, greatly restricted the jurisdiction of district courts in relation to their review of removal proceedings and facts related

to removal proceedings, including through habeas petitions. *See* 8 U.S.C. § 1252(a)(5). Pursuant to the Act,

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 2241], or any other habeas corpus provision, and [28 U.S.C. §§ 1361 and 1651, the statutes which provide the basis for mandamus jurisdiction,] a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section. For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus pursuant to [28 U.S.C. § 2241], or any other habeas corpus provision, [28 U.S.C. §§ 1361 and 1651], and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5). The statute likewise provides that

> [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under [8 U.S.C. § 2241] or any other habeas corpus provision, by [28 U.S.C. §§ 1361 or 1651], or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). As the Third Circuit has explained, Congress' goal in passing the Act was "to streamline . . . uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)," which Congress sought to achieve "[b]y placing all review in the courts of appeals [thus providing] an adequate and effective alternative to habeas corpus." *Verde-Rodriguez v. Atty' Gen.*, 734 F.3d 198, 207 (3d Cir. 2013). Pursuant to the REAL ID Act, this Court thus has no jurisdiction to review determinations of fact or law directly related to Petitioner's removal order. Because Petitioner's

4

removal order was directly related to the Immigration Judge's determination that Petitioner was an applicant for admission not entitled to admission to the United States (*see* ECF No. 12-3; ECF No. 6-4), this Court has no jurisdiction to review that finding. As such, this Court must accept for the purposes of this opinion that Petitioner remained an applicant for admission who was only paroled into the United States, and that his current detention thus arises out of his applicant status and arises under 8 U.S.C. § 1225(b).[2]

**2. Petitioner's Challenge to his Detention**

In his remaining claims, Petitioner asserts that his ongoing detention is unconstitutional as it has become prolonged and he has not received a bond hearing, to which he asserts he is entitled under the reasoning applied in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). Both of those cases, however, held only that detention without bond under 8 U.S.C. § 1226(c), which applies only to criminal aliens who have already effected an entry into the United States, was subject to

---

[2] Even if this Court had jurisdiction to address this argument, Petitioner's argument that he is not subject to § 1225(b) detention is without merit. Petitioner's argument is essentially that, because Petitioner's secondary inspection was deferred at the time of his arrival and Petitioner avoided completing that inspection for three years, the Government never determined that he was actually an applicant for admission, and his parole into the United States was actually an admission. Petitioner bases this argument on statements in the Third Circuit's decision in *Doe v. Att'y Gen.*, 659 F.3d 266 (3d Cir. 2011), taken out of context. As the Third Circuit explained in *Doe*, the determination of whether a lawful permanent resident's criminal history renders him an "applicant for admission" subject to 8 U.S.C. § 1225(b) is made "at the border" and is proper so long as the Government had probable cause to believe the alien's history was sufficient to strip him of lawful permanent resident status. *Id.* at 270-73. Petitioner cannot reasonably assert that his criminal history was insufficient to so strip him of lawful permanent resident status, instead he asserts that because the Government did not formally announce Petitioner's applicant status before paroling him, it cannot do so after the fact. *Doe* does not support this contention, instead, *Doe* determined that the petitioner's status in *Doe* must have been made at the border because Petitioner was paroled rather than admitted into the United States. *Id.* at 269-70. The reason this is so is because controlling regulations establish that any alien who is paroled for deferred inspection "shall be regarded as an applicant for admission" at his deferred inspection. *See* 8 C.F.R. § 235.2. Thus, by deferring inspection to Newark, the Government did exactly what Petitioner insists it was required to do – make it clear that Petitioner was to be treated as an applicant for admission rather than a lawful permanent resident. Petitioner's argument that his parole for deferred inspection was an admission is without merit, and Petitioner was clearly subject to consideration of an applicant for admission moving forward, notwithstanding his parole. *See, e.g.,* 8 U.S.C. § 1182(d)(5)(A) ("parole [of an applicant for admission] shall not be regarded as an admission of the alien and when the purposes of such parole shall . . . have been served the alien shall forthwith . . . be returned to . . . custody" under 8 U.S.C. § 1225(b)).

an implicit reasonable time limitation, a conclusion that was directly abrogated – as to both § 1226(c) and § 1225(b) – by the Supreme Court's recent decision in *Jennings v. Rodriguez*, 538 U.S. ---, 138 S. Ct. 830 (2018).

In *Jennings*, the Supreme Court specifically rejected the use of the canon of constitutional avoidance to read implicit time limitations into statutes which on their face authorize detention throughout removal proceedings, including sections 1225 and 1226. As the Supreme Court explained,

> [Section] 1225(b) applies primarily to aliens seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b) divides these applicants into two categories. First, certain aliens claiming a credible fear of persecution under § 1225(b)(1) "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Second, aliens falling within the scope of § 1225(b)(2) "shall be detained for a [removal] proceeding." § 1225(b)(2)(A).
>
> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the[ir] application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once these proceedings end, detention under § 1225(b) must end as well. Until that point, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.
>
> Despite the clear language of [the statute], respondents argue – and the Court of Appeals held – that those provisions nevertheless can be construed to contain implicit limitations on the length of detention. But neither of the two limiting interpretations offered by respondents is plausible.
>
> . . . .
>
> . . . Spotting a constitutional issue [in relation to a statute] does not give a court the authority to rewrite a statute as it pleases [using the canon of constitutional avoidance]. Instead, the canon permits a court to "choos[e] between competing *plausible* interpretations of a statutory text." *Clark* [*v. Martinez*, 543 U.S.

6

371, 381 (2005)] (emphasis added). To prevail, respondents must show that § 1225(b)'s detention provisions may plausibly be read to contain an implicit [time] limit. And they do not even attempt to defend that reading of the text.

In much the same manner, the Court of Appeals all but ignored the statutory text. Instead it read *Zadvydas*[] as essentially granting a license to graft a time limit onto the text of § 1225(b). *Zadvydas*, however, provides no such authority.

*Zadvydas* concerned § 1231(a)(6), which authorizes the detention of aliens who have already been ordered removed from the country. Under this section, when an alien is ordered removed, the Attorney General is directed to complete removal within a period of 90 days, 89 U.S.C. § 1231(a)(1)(A), and the alien must be detained during that period, § 1231(a)(2). After that time elapses, however, § 1231(a)(6) provides only that certain aliens "*may* be detained" while efforts to complete removal continue[.]

In *Zadvydas*, the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal," 533 U.S. [at 699,] and it further held that six months is a presumptively reasonable period, *id.* [at 701.] After that, the Court concluded, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release the alien. *Ibid.*

The *Zadvydas* Court justified this interpretation by invoking the constitutional-avoidance canon, and the Court defended its resort to that canon on the ground that § 1231(a)(6) is ambiguous [as it used the phrase "*may* be detained."] . . .

*Zadvydas* represents a notably generous application of the constitutional-avoidance canon, but the Court of Appeals in this case went much further. It failed to address whether *Zadvydas's* reasoning may fairly be applied in this case despite the many [differences between § 1231(a)(6) and § 1225(b)]. Those differences preclude the reading adopted by the Court of Appeals.

To start, §§ 1225(b)(1) and (b)(2), unlike § 1231(a)(6), provide for detention for a specified period of time. Section 1225(b)(1) mandates detention "for further consideration of the application for asylum . . . and § 1225(b)(2) requires detention "for a [removal] proceeding[."] The plain meaning of those phrases is

7

> that detention must continue until the immigration officers have finished "consider[ing]" the application for asylum . . . or until removal proceedings have concluded[.] By contrast, Congress left the permissible length of detention under § 1231(a)(6) unclear.
>
> Moreover, in *Zadvydas*, the Court saw ambiguity in § 1231(a)(6)'s use of the word "may." Here, by contrast, §§ 1225(b)(1) and (b)(2) do not use the word "may." Instead, they unequivocally mandate that aliens falling within their scope "shall" be detained. "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Technologies, Inc. v. United States*, 579 U.S. ---, ---, 136 S.Ct. 1969, 1977[] (2016). That requirement of detention precludes a court from finding ambiguity here in the way that *Zadvydas* found ambiguity in § 1231(a)(6).
>
> *Zadvydas's* reasoning is particularly inapt here because there is a specific provision authorizing release from § 1225(b) detention whereas no similar release provision applies to § 1231(a)(6). With a few exceptions not relevant here, the Attorney General may "for urgent humanitarian reasons or significant public benefit" temporarily parole aliens detained under §§ 1225(b)(1) and (b)(2). 8 U.S.C. § 1182(d)(5)(A). That express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released. See A. Scalia & B. Garner, Reading Law 107 (2012) ("Negative–Implication Canon[:] The expression of one thing implies the exclusion of others (expressio unius est exclusio alterius )"). That negative implication precludes the sort of implicit time limit on detention that we found in *Zadvydas*.[]
>
> In short, a series of textual signals distinguishes the provisions at issue in this case from *Zadvydas's* interpretation of § 1231(a)(6). While *Zadvydas* found § 1231(a)(6) to be ambiguous, the same cannot be said of §§ 1225(b)(1) and (b)(2): Both provisions mandate detention until a certain point and authorize release prior to that point only under limited circumstances. As a result, neither provision can reasonably be read to [contain an implicit time limit[ation.]

*Id.* at 842-44.

Jennings thus foreclosed any use of the constitutional avoidance canon to read an implicit time limitation into § 1225(b), and, indeed, into § 1226(c) as well, and thus abrogated the holdings

8

of the Third Circuit and the district courts of this circuit applying such a rule to either statute. The Supreme Court left open, however, the possibility of a successful as applied constitutional challenge to the statute on an individual case by case basis. *See Id.* at 851-52. Thus, Petitioner would only be entitled to relief – such as the bond hearing he now requests – if he could show that the statute was unconstitutional.

Although *Jennings* abrogated the holdings of this and other courts finding an implicit reasonable time limitation on § 1225(b) detention, *Jennings* did not address this Court's prior determination that those detained under the statute, as applicants for admission, possess some rights under the Due Process Clause which may be impugned should detention under the statute become unduly and unreasonably prolonged. As this Court has explained, in *Damus v. Tsoukaris*, No. 16-933, 2016 WL 4203816, at *2-3 (D.N.J. Aug. 8, 2016),

> To the extent that Petitioner asserts a constitutional claim for relief [from detention under § 1225(b)], such a claim would be affected by his status as an applicant for admission rather than an alien who has previously entered the country. *See, e.g., Maldonado v. Macias*, 150 F. Supp. 3d 788, 798-800 (W.D. Tex. 2015). Petitioner's status as an applicant for admission affects his right to Due Process because applicants for admission are subject to the "entry fiction" which provides that, for legal and constitutional purposes, an alien stopped at the border is considered to remain at the border even if he is paroled into the country, and is treated as such for the purpose of determining his rights to relief. *Id.*; *see also see also Kay*[, 94 F. Supp. 2d at 554] (describing the "entry fiction"). The distinction is not one without a difference, as the Supreme Court in *Zadvydas* observed that it "is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders," and that "once an alien [for legal purposes] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." 533 U.S. at 693. The Court has likewise suggested that even for those aliens found within the United States, "the Due Process Clause does not require [the Government] to employ the least burdensome means to accomplish [the removal of those aliens]." *Demore v. Kim*, 538

9

> U.S. 510, 523 (2003). Indeed, "the Supreme Court has made clear that inadmissible aliens are entitled to less due process than are resident aliens." *Maldonado*, 150 F. Supp. 3d at 799 (citing *Demore*, 538 U.S. at 547 (O'Connor, J., concurring)). Indeed, as *Zadvydas* explained, an alien's treatment "as if stopped at the border" has historically been held sufficient to justify lengthy and seemingly interminable detention. 533 U.S. at 692-93 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). By all appearances, then, Petitioner, as an alien deemed an applicant for admission who is legally treated as if stopped at the border is entitled to something less than the full panoply of rights usually conferred by the Due Process Clause. *Cf. Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) (holding that at least the substantive portion of the Due Process Clause must apply to even those aliens at the border as to hold otherwise would permit the Government to "torture or summarily execute them" which would amount to an absurd proposition).
>
> Thus, although Petitioner is likely not entitled to all the rights Due Process would provide an alien considered [to be] within this country, he has at least some entitlement to proper procedures. The question that arises, then, is whether mandatory detention *ad infinitum* comports with that entitlement. On this issue, however, neither the Supreme Court nor the Third Circuit has provided clear guidance.

*Id.*

This Court has thus previously determined that aliens subject to detention as applicants for admission are entitled to Due Process Protections, albeit to a lesser extent than those which would apply to aliens subject to mandatory detention under § 1226(c) who are already considered to have entered the country. *Id.* at *4 ("[e]ssentially, the distinction in the level of protections between the two classes of aliens is one of magnitude rather than entitlement to relief – an alien who is legally considered to remain at the border has no right of entry into this country and . . . may be held for a greater length of time before his continued detention raises Due Process concerns").

The question which remains is straightforward: has Petitioner's detention for approximately a year become so unduly prolonged that it renders § 1225(b) unconstitutional as

10

applied to him? As Judge Wigenton recently explained in *Dryden v. Green*, No. 18-2686, 2018 WL 3062909, at *3-4 (D.N.J. June 21, 2018),

> Although the Third Circuit's ultimate rulings in *Diop* and *Chavez-Alvarez* have been abrogated by *Jennings*, and those two cases are no longer binding upon this Court, it does not follow that those two cases should be ignored. The constitutional reasoning that underlay the Third Circuit's invocation of the constitutional avoidance canon still provides some persuasive guidance to how this Court should address [the constitutionality of indefinite immigration detention]. Specifically, the Court accepts that the "constitutionality of [detention . . . without a bond hearing] is a function of the length of the detention [and t]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds." *Chavez-Alvarez*, 783 F. 3d at 474 (quoting *Diop*, 656 F.3d at 232, 234). This Court likewise is mindful that "any determination on reasonableness [must be] highly fact specific" and that "at a certain point – which may differ case by case[] – the burden to an alien's liberty outweighs" the Government's interest in detention without bond," *id.* at 474-75, and that detention which is so unreasonable as to amount to an arbitrary deprivation of liberty cannot comport with the requirements of the Due Process Clause. *Id.* at 474; *see also Demore*, 538 U.S. at 432 (Kennedy, J., concurring). Because, however, *Jennings* foreclosed the constitutional avoidance basis provided by the Third Circuit in its determination that detention will normally become suspect between six months and a year, and because *Jennings* leaves open only the question of whether § 1226(c) is unconstitutional as applied to [any given] petitioner, it is insufficient that Petitioner's detention has merely become suspect by reaching this six month to a year threshold, in order for Petitioner to be entitled to release he must show that his ongoing detention is so unreasonable or arbitrary that it has actually violated his rights under the Due Process Clause. If Petitioner's detention has not become so unreasonable or arbitrary that continued application of the statute is unconstitutional as applied to Petitioner, § 1226(c) authorizes his continued detention until a final order of removal is entered and Petitioner would not be entitled to relief. *Jennings*, 138 S. Ct. at 846-47.

*Id.*

In prior cases which have applied a now-abrogated implied reasonableness limitation to § 1225(b) detainees, this Court and others in this District frequently found that detention for just

over a year was, given the lesser Due Process protections applicable to applicants for admission, insufficient to render continued detention so suspect as to require a bond hearing. *See, e.g., Damus*, 2016 WL 4203816, at *4; *Alghazali v. Tsoukaris*, No. , 2017 WL 3191513, at *5 (D.N.J. July 27, 2017) (detention up to fifteen months not unreasonable); *but see Mancia-Salazar*, 2017 WL 2985392 at *4-5 (following *Damus* but finding detention of 18 months under § 1225 had become unreasonable under the facts at hand). As this Court has previously determined that detention of just over a year is normally insufficient to render detention under § 1225(b) constitutionally suspect, it necessarily follows that detention for a similar period of time cannot be so prolonged and unreasonable as to actually render the statute unconstitutional as applied to Petitioner absent egregious factual circumstances not present in this case. *Accord Dryden*, 2018 WL 3062909 at *5 (mandatory detention for just over a year under § 1226(c) not an unconstitutional application of the statute). This Court thus concludes that Petitioner's detention under § 1225(b) for just over a year is not an unconstitutional application of the statute to Petitioner, and that Petitioner therefore remains subject to mandatory detention. Petitioner's habeas petition must therefore be denied.

### III. CONCLUSION

For the reasons stated above, this Court will deny Petitioner's habeas petition without prejudice to the filing of another petition should the length of Petitioner's detention become unreasonable. An appropriate order follows.

Date: July 5, 2018

JOSE L. LINARES
Chief Judge, United States District Court